ORIGINAL

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

FILED
JAN 2 3 2004
U.S. COURT OF FEDERAL CLAIMS

FPL ENERGY SEABROOK, LLC, on its own behalf and as managing agent of Seabrook Unit 1 Power Station on behalf of co-owners MASSACHUSETTS MUNICIPAL WHOLESALE ELECTRIC COMPANY, TAUNTON MUNICIPAL LIGHTING PLANT, and HUDSON LIGHT AND POWER DEPARTMENT,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

No.: 04-0088C

Judge: ____________

## COMPLAINT

FPL Energy Seabrook, LLC ("FPL Energy"), on its own behalf and as managing agent of Seabrook Unit 1 Power Station ("Seabrook Station") on behalf of its co-owners Massachusetts Municipal Wholesale Electric Company ("MMWEC"), Taunton Municipal Lighting Plant ("TMLP"), and Hudson Light and Power Department ("HLPD") (all four collectively, "Seabrook Owners"), for their complaint in this action, allege as follows:

## NATURE OF THE CASE

1. The Seabrook Owners bring this lawsuit to recover significant damages caused by the Department of Energy's ("DOE") material partial breach of its unconditional obligation to begin disposing of spent nuclear fuel and high level nuclear waste (collectively, "SNF") generated by the Seabrook Station, a commercial nuclear power plant owned by the Seabrook Owners and operated by FPL Energy. Pursuant to the Nuclear Waste Policy Act of 1982, as

amended, 42 U.S.C. §§ 10101 et seq. ("NWPA"), DOE and the Seabrook Station's then owners[1] entered into a Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste (the "Standard Contract") in 1986. Under the Standard Contract, the Predecessor Owners paid and, subsequent to FPL Energy's purchase of an ownership interest in the Seabrook Station, the Seabrook Owners paid and continue to pay substantial fees in return for DOE's obligation to remove and dispose of SNF beginning no later than January 31, 1998. The Seabrook Owners (and the Predecessor Owners) have fully complied with their fee payment obligations under the Standard Contract. DOE, however, has failed to perform its reciprocal obligation to dispose of SNF, and has stated that it will not do so until 2010 at the earliest. The Seabrook Owners have incurred and will continue to incur significant costs associated with procuring additional SNF storage capacity and other damages as a result of DOE's total disregard of its contractual obligations.

## PARTIES

2. FPL Energy is the managing agent and operator of Seabrook Station. In accordance with the terms of Seabrook Station's operating agreement, FPL Energy is submitting this claim on its own behalf and as agent for the three co-owners of Seabrook Station: (1) MMWEC; (2) TMLP; (3) and HLPD. FPL Energy is a limited liability company with its usual place of business in Juno Beach, Florida. MMWEC is a political subdivision of the Commonwealth of Massachusetts acting as an electricity wholesaler with a principal place of

---

[1] The Seabrook Station's then owners who were signatories to the Standard Contract were: MMWEC, TMLP, HLPD, New Hampshire Yankee Division of the Public Service Company of New Hampshire, United Illuminating Company, Central Maine Power Company, Fitchburg Gas and Electric Light Company, Montaup Electric Company, New England Power Company, Central Vermont Public Service Corporation, Canal Electric Company, Connecticut Light and Power Company, New Hampshire Electric Cooperative, Inc., Vermont Electric Cooperative, Inc., Maine Public Service Company, and Bangor Hydro-Electric Company (collectively, "Signatories"). The Signatories to the Standard Contract together with North Atlantic Energy Corporation and Great Bay Power Corporation (two subsequent partial owners of Seabrook) are referred to collectively as the "Predecessor Owners." Because of their continued ownership, MMWEC, TMLP, and HLPD are "Signatories," "Predecessor Owners," and current "Seabrook Owners."

business in Ludlow, Massachusetts. See Mass. St. 1975, c. 775; Mass. Gen. Laws Ann., ch. 164, App. § 1-1 et seq. TMLP and HMLP are Massachusetts municipal light departments located in Taunton and Hudson, Massachusetts, respectively. See Mass. Gen. Laws Ann., ch. 164, § 34 et seq. Seabrook Station's operating license was issued by the Nuclear Regulatory Commission ("NRC") in 1986. The nuclear plant has generated and continues to generate SNF, which is stored at the plant site. The Signatories entered into a Standard Contract with DOE pursuant to which DOE is to accept and dispose of the SNF generated by Seabrook Station in return for payment of specified fees. On August 22, 2002, the Predecessor Owners[2] satisfied the notice requirements of Article XIV, Assignment, of the Standard Contract with respect to the assignment of the rights and duties of the Predecessor Owners (except MMWEC, TMLP, and HLPD) under the Standard Contract. Although not required by the Standard Contract, on September 11, 2002, DOE acknowledged receipt of the notice of assignment. On November 1, 2002, FPL Energy acquired its interest in Seabrook Station. On November 19, 2002, FPL Energy notified DOE that FPL Energy had taken over management responsibility for Seabrook Station and that ownership shares had changed such that FPL Energy owns 88.22889%, while MMWEC continues to own 11.59340%, TMLP continues to own .10034%, and HLPD continues to own .07737%.

3. Defendant is the United States of America, acting through DOE.

## JURISDICTION

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1491(a)(1).

5. DOE's complete failure to comply with its essential contractual obligation to begin disposing of SNF by January 31, 1998 constitutes a material partial breach of its Standard

[2] At the time FPL Energy purchased an ownership interest in Seabrook Station, the following Predecessor Owners together owned Seabrook Station: North Atlantic Energy Corporation, United Illuminating Company, Great Bay Power Corporation, Little Bay Power Corporation, MMWEC, New England Power Company, Connecticut Light and Power Company, Canal Electric Company, New Hampshire Electric Cooperative, Inc., TMLP, and HLPD.

Contract with the Seabrook Owners, for which the Seabrook Owners may seek recovery of their damages in this Court without exhausting any administrative remedies. In companion decisions handed down on August 31, 2000, the Federal Circuit conclusively rejected the Government's exhaustion of remedies jurisdictional defense. See Northern States Power Co. v. United States, 224 F.3d 1361 (Fed. Cir. 2000) ("Northern States II"); Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336 (Fed. Cir. 2000) ("Maine Yankee").

6. Furthermore, Article XI of the Standard Contract states, "Nothing in this contract shall be construed to preclude either party from asserting its rights and remedies under the contract or at law." Pursuant to this provision, the Seabrook Owners are entitled to pursue their legal claims without exhausting any administrative remedies.

## FACTUAL BACKGROUND

### The Standard Contract

7. In 1982, Congress enacted the NWPA, codifying the Federal Government's long-standing commitment to accept responsibility and provide for the timely disposition of commercial SNF. Pursuant to Section 302(a)(5)(B) of the NWPA, 42 U.S.C. § 10222(a)(5)(B), DOE was required to commence disposing of commercially-generated SNF no later than January 31, 1998, in return for the payment of fees by utilities and others that generated or held title to the SNF. The fees are paid into the Nuclear Waste Fund, which is the source of funds to cover DOE's costs for disposing of SNF.

8. Pursuant to Section 302 of the NWPA, in 1983 DOE developed the Standard Contract. The Standard Contract embodies the reciprocal obligations mandated by the NWPA, pursuant to which contract holders agree to pay fees into the Nuclear Waste Fund in return for the provision of SNF disposal services by DOE, beginning no later than January 31, 1998. See 10 C.F.R. Part 961.11. Specifically, the Standard Contract provides that "[t]he services to be

provided by DOE under this contract shall begin, after commencement of facility operations, not later than January 31, 1998 and shall continue until such time as all SNF . . . has been disposed of." 10 C.F.R. § 961.11, Art. II.

9. The Signatories executed a Standard Contract with DOE on June 27, 1986. To date, the Seabrook Owners and the Predecessor Owners have paid more than $104 million into the Nuclear Waste Fund pursuant to this contract and the Seabrook Owners continue to pay fees of over $9 million per year. In accordance with the November 1, 2002 Purchase and Sale Agreement, FPL Energy obtained ownership of 88.23% of Seabrook Station and was transferred all claims arising under the Standard Contract with respect to that ownership percentage.

**DOE's Anticipatory Breach of the Contractual Deadline**

10. Notwithstanding the obligation imposed upon DOE by the Standard Contract, DOE failed to meet most of the early milestones established by the NWPA. These early failures eventually led to problems further along the program schedule, particularly in establishing the geologic repository required by the NWPA. At the same time, however, DOE continued to make commitments and representations that it would begin to dispose of SNF by the 1998 deadline.

11. For example, in a September 7, 1984 letter by Donald P. Hodel, then Secretary of Energy, to United States Senator J. Bennett Johnston, Secretary Hodel stated, "Pursuant to my authority, it is my intention that this commitment together with the overall thrust of the [NWPA], will create an obligation for [DOE] to accept spent fuel in 1998 whether or not a repository is in operation."

12. Similarly, in its 1987 Mission Plan Amendment, DOE announced that the geologic repository required by the NWPA would not be available until 2003. DOE indicated, however, that it would be able to begin accepting SNF by 1998 at a Monitored Retrievable Storage ("MRS") facility designed to store SNF until commencement of repository operations.

13. Congress substantially amended the NWPA in 1987. As amended, the NWPA required DOE to focus its entire repository development effort on characterizing Yucca Mountain, Nevada, one of the earlier-identified candidate sites, to determine its suitability as the nation's first geologic repository. 42 U.S.C. § 10133. Congress also authorized DOE to construct a MRS but did not name a specific site. Rather, the NWPA provided two different options for siting a MRS. Under the first option, a MRS could be sited through the efforts of the Nuclear Waste Negotiator, an Executive Branch position created by the 1987 Amendments. 42 U.S.C. §§ 10242-10249. Under the second option for MRS siting, DOE was authorized to site and develop a MRS on its own, but on a schedule that was linked by the NWPA to the development of the repository. 42 U.S.C. §§ 10165(b), 10168(d).

14. By 1987, the repository program was more than ten years behind schedule. Nevertheless, DOE relied solely on the efforts of the Nuclear Waste Negotiator for development of the MRS. DOE did not develop any contingency plans for meeting the January 31, 1998 deadline in the event that the Negotiator was unsuccessful, a state of events that continued even after the Negotiator's authority expired with the unsuccessful completion of his mission. Not surprisingly, DOE's waste disposal program fell further behind schedule.

15. In 1995, DOE issued a Final Interpretation of Nuclear Waste Acceptance Issues ("Final Interpretation") wherein DOE retreated from its earlier acknowledgments that it had an unconditional obligation to begin disposing of SNF by January 31, 1998. 60 Fed. Reg. 21973, 21974 (May 3, 1995). In its Final Interpretation, DOE stated that, since passage of the NWPA, it "has become apparent that neither a repository nor an interim storage facility constructed under the Act will be available by 1998," and that it would commence disposing of SNF at a repository by 2010 at the earliest. 60 Fed. Reg. at 21794. The Final Interpretation also stated DOE's conclusion that the NWPA does not impose an obligation on DOE to commence disposing of contract holders' SNF in 1998 in the absence of a disposal or interim storage facility. Id. at 21794-95.

**DOE's Breach of its Contractual Obligation**

16. A number of utilities filed petitions for review of the Final Interpretation in the U.S. Court of Appeals for the District of Columbia Circuit. The D.C. Circuit ruled in favor of the petitioners and held that the NWPA imposed on DOE an unconditional obligation to begin disposing of SNF by January 31, 1998. Indiana Michigan Power Co, v. Department of Energy, 88 F.3d 1272 (D.C. Cir. 1996). The D.C. Circuit further held that this obligation was reciprocal to the utilities' obligation to pay fees into the Nuclear Waste Fund. The D.C. Circuit remanded the matter to DOE for proceedings consistent with the opinion.

17. Notwithstanding the D.C. Circuit's unequivocal ruling, DOE advised the Predecessor Owners and other Standard Contract holders that it would not begin to dispose of SNF by the January 31, 1998 deadline. Specifically, DOE announced in a December 17, 1996 letter to contract holders "that DOE anticipates it will be unable to begin acceptance of spent nuclear fuel for disposal in a repository or interim storage facility by January 31, 1998." DOE further took the position that its failure to meet the deadline was excused because its delay was unavoidable.

18. In response to DOE's recalcitrance, a number of utilities filed another petition with the D.C. Circuit for a writ of mandamus to compel DOE to comply with the mandate in Indiana Michigan. In Northern States Power Co. v. United States Dep't of Energy, 128 F.3d 754 (D.C. Cir. 1997) ("Northern States I"), the D.C. Circuit reiterated that DOE had an unconditional obligation under both the NWPA and the Standard Contract to begin disposing of utilities' SNF by January 31, 1998. The D.C. Circuit also held that DOE had a clear duty to act in accordance with this unconditional obligation and issued a writ of mandamus precluding DOE from arguing that its failure to meet the January 31, 1998 deadline was unavoidable. On November 30, 1998, the United States Supreme Court denied DOE's petition for a writ of certiorari in the Northern States I case, 525 U.S. 1016 (1998).

19. Despite the ruling in Northern States I, DOE made no effort to meet the contractual deadline. DOE did not begin to dispose of SNF by January 31, 1998, as required by the NWPA and Standard Contract, and has maintained the position announced prior to the D.C. Circuit's rulings that it will not begin to dispose of SNF until 2010 at the earliest. DOE has failed and refused to provide any firm commencement date for the disposal of Seabrook Station's SNF.

20. In Maine Yankee, decided by the Federal Circuit on August 31, 2000, the Federal Circuit concluded that DOE's admitted failure to begin accepting spent nuclear fuel by the January 31, 1998 contractual deadline constituted a breach of the Standard Contract. In the companion Northern States II case, the Federal Circuit held that the unavoidable delays provision of the contract "does not bar a suit seeking damages for the Government's failure to begin performance at all by the statutory and contractual deadline of January 31, 1998." Northern States II, 224 F.3d at 1367. In summary, the Federal Circuit has determined as a matter of law that DOE breached the contract and that the Seabrook Owners and other similarly situated utilities that are parties to the Standard Contract can bring an action for breach of contract damages in this Court.

**Nature of Damages Sustained by the Seabrook Owners as a Result of DOE's Breach**

21. As a direct consequence of DOE's disregard of its contractual obligations and defiance of the D.C. Circuit's rulings, the Seabrook Owners have been and will be forced to incur substantial additional costs to provide for extended on-site storage of its SNF. Moreover, the Seabrook Owners have incurred and will continue to incur other substantial damages, including but not limited to regulatory costs associated with efforts to ensure sufficient on-site storage capacity or alternative off-site storage capacity to permit continued operation of its nuclear plant.

## CLAIMS FOR RELIEF

## COUNT I

**(Partial Breach of Contract)**

22. Paragraphs 1 through 21 are incorporated herein by reference as if set forth in full.

23. The Seabrook Owners and the Predecessor Owners have complied and the Seabrook Owners continue to comply with all of their obligations under the Standard Contract, including the payment of all required fees into the Nuclear Waste Fund.

24. DOE has failed to perform its obligation under the Standard Contract to dispose of SNF beginning no later than January 31, 1998, and thereby has partially and materially breached the Standard Contract.

25. As a direct and proximate result of DOE's partial breach of the Standard Contract, the Seabrook Owners have incurred and will incur damages in an amount to be determined at trial. The rate at which the Seabrook Owners' damages will continue to accrue is dependent upon various factors including but not limited to when DOE commences performance of its contractual obligations, and the Seabrook Owners reserve all rights to recover presently unascertainable damages that may be caused by DOE's future partial breaches of the Standard Contract.

## COUNT II

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

26. Paragraphs 1 through 25 are incorporated herein by reference as if set forth in full.

27. The Standard Contract between the Seabrook Owners and DOE contains an implied covenant of good faith and fair dealing, pursuant to which DOE has a duty to perform its obligations under the contract in good faith and not to take actions detrimental to the Seabrook

Owners' contractual rights. DOE has breached the covenant of good faith and fair dealing by failing and refusing to make any effort to meet the contractual deadline for beginning to dispose of SNF; by steadfastly attempting to avoid its obligations under the Standard Contract as defined by the D.C. Circuit; by failing to make any effort to dispose of Seabrook Station's SNF or even to provide the Seabrook Owners with a firm date on which DOE will begin to do so; and by insisting on the Seabrook Owners' continued performance of their reciprocal obligation to pay fees into the Nuclear Waste Fund despite DOE's refusal to perform.

28. DOE's failure to act has not been the result of inadequate resources. DOE's annual expenditures from the Nuclear Waste Fund have consistently been well below the level of annual receipts into the Nuclear Waste Fund. There are ample funds available to DOE to comply with its contractual obligations.

29. In contrast to DOE's failure to take any action to meet its contractual commitments, DOE has taken action to receive, transport, and store SNF from other entities. For example, DOE has accepted and continues to store SNF from foreign research reactors.

30. As a direct and proximate result of DOE's breach of the implied covenant of good faith and fair dealing, the Seabrook Owners have suffered and will continue to suffer damages as alleged above.

## COUNT III

### (Taking Without Just Compensation)

31. Paragraphs 1 through 30 are incorporated herein by reference as if set forth in full.

32. Based on its long standing commitment to dispose of SNF, which was codified with a date certain in the NWPA, DOE was and is unequivocally obligated under the Standard

Contract and the NWPA to commence acceptance and disposal of SNF no later than January 31, 1998.

33. DOE's failure and refusal to comply with the requirements of the Standard Contract and the NWPA for acceptance and disposal of Seabrook Station's SNF constitutes a taking of the Seabrook Owners' vested real property rights. For example, the DOE's failure to honor its commitments under the Standard Contract will prevent the Seabrook Owners from being able to decommission their nuclear plant site and devote that site to commercial uses as soon as they otherwise would have been able to do so. DOE's conduct has deprived, and will continue to deprive, the Seabrook Owners of the full valuable economic use of that site, as well as the real property on which the SNF is stored and from which it cannot lawfully be removed.

34. The Seabrook Owners are entitled to just compensation for this taking of their real property in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, the Seabrook Owners, respectfully request that the Court enter judgment in their favor and against the United States as follows:

(a) On Count I, for damages in an amount to be established at trial;

(b) On Count II, for damages in an amount to be established at trial;

(c) On Count III, for damages in an amount to be established at trial;

(d) Pre-judgment and post-judgment interest as permitted by law;

(e) Costs of suit, including reasonable attorneys' fees as permitted by law; and

(f) Such other and further relief as this Court may deem proper.

Dated: January 23, 2004

Respectfully submitted,

Alex D. Tomaszczuk
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, VA 22102
(703) 770-7940 – telephone
(703) 770-7901 – facsimile

Attorney of Record for Plaintiffs:
FPL Energy Seabrook, LLC
Taunton Municipal Lighting Plant
Hudson Light and Power Department
Massachusetts Municipal Wholesale Electric Company

*Of Counsel*:
Jay E. Silberg
Devon E. Hewitt
Douglas Rosinski
Daniel S. Herzfeld
Jack Y. Chu
SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000

Mitchell S. Ross
Managing Attorney
FPL Energy Seabrook, LLC
700 Universe Boulevard
Juno Beach, FL 33408-0420

Nicholas J. Scobbo, Jr.
Ferriter Scobbo & Rodophele PC
125 High Street
Boston, MA 02110
Counsel for: Massachusetts Municipal Wholesale Electric Company and Hudson Light and Power Department

Robert G. Funke
58 Tremont Street
P.O. Box 628
Taunton, MA 02780
Counsel for: Taunton Municipal Lighting Plant

Document #: 1244611 v.6

ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
JAN 2 3 2004
U.S. COURT OF FEDERAL CLAIMS

FPL ENERGY SEABROOK, LLC, on its own behalf and as managing agent of Seabrook Unit 1 Power Station on behalf of co-owners MASSACHUSETTS MUNICIPAL WHOLESALE ELECTRIC COMPANY, TAUNTON MUNICIPAL LIGHTING PLANT, and HUDSON LIGHT AND POWER DEPARTMENT,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

No.: 04-0088C

Judge: ____________

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to RCFC 7.1, FPL Energy Seabrook, LLC, Massachusetts Municipal Wholesale Electric Company, Taunton Municipal Lighting Plant, and Hudson Light and Power Department, submit this corporate disclosure statement.

FPL Energy Seabrook, LLC, is a wholly owned subsidiary of ESI Energy LLC, which in turn is a wholly owned subsidiary of FPL Energy, LLC, which in turn is a wholly owned subsidiary of FPL Group Capital Inc., which in turn is a wholly owned subsidiary of FPL Group, Inc. Of these companies, only FPL Group, Inc. (which indirectly owns more than 10% of FPL Energy Seabrook, LLC) is a publicly held corporation.

In accordance with RCFC 7.1, which only applies to a "nongovernmental corporate party," Massachusetts Municipal Wholesale Electric Company is not required to file a corporate disclosure statement with this Court, because it is a political subdivision of the Commonwealth

of Massachusetts. See Mass. St. 1975, c. 775; Mass. Gen. Laws Ann., ch. 164, App. § 1-1 et seq. Similarly, Taunton Municipal Lighting Plant and Hudson Light and Power Department do not have to file a corporate disclosure statement because they are Massachusetts municipal light departments. See Mass. Gen. Laws Ann., ch. 164, § 34 et seq.

Dated: January 23, 2004

Respectfully submitted,

Alex D. Tomaszczuk
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, VA 22102
(703) 770-7940 – telephone
(703) 770-7901 – facsimile

Attorney of Record for Plaintiffs:
FPL Energy Seabrook, LLC
Taunton Municipal Lighting Plant
Hudson Light and Power Department
Massachusetts Municipal Wholesale Electric Company

*Of Counsel*:
Jay E. Silberg
Devon E. Hewitt
Douglas Rosinski
Daniel S. Herzfeld
Jack Y. Chu
SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000

Mitchell S. Ross
Managing Attorney
FPL Energy Seabrook, LLC
700 Universe Boulevard
Juno Beach, FL 33408-0420

Nicholas J. Scobbo, Jr.
Ferriter Scobbo & Rodophele PC
125 High Street
Boston, MA 02110
Counsel for: Massachusetts Municipal Wholesale Electric Company and Hudson Light and Power Department

Robert G. Funke
58 Tremont Street
P.O. Box 628
Taunton, MA 02780
Counsel for: Taunton Municipal Lighting Plant

Document #: 1268598 v.1