IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CANAL ELECTRIC COMPANY, Plaintiff, | ) | |
| v. | ) | No.04–0035C (Judge Hodges) |
| UNITED STATES OF AMERICA Defendant. | ) | |

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO TRANSFER AND CONSOLIDATE IN ACCORDANCE WITH RCFC 40.2(a)(3) AND 42.1

Defendant, the United States, respectfully submits this reply to "Canal Electric Company's Response to Defendant's Motion to Transfer and Consolidate in Accordance with RCFC 40.2(a)(3) and 42.1," dated December 27, 2004, in which plaintiff, Canal Electric Company ("Canal"), opposes transfer and consolidation of this case with FPL Energy Seabrook, LLC v. United States, No. 04-88C (Fed. Cl.), currently pending before Chief Judge Damich.[1]

Canal's opposition demonstrates a clear misapprehension of the issues involved in this litigation, as well as a fundamental misunderstanding of the claims brought by FPL Energy Seabrook, LLC ("FPL Energy") in the related case. Canal's repeated representations that the rate at which the Department of Energy ("DOE") is obligated to accept spent nuclear fuel ("SNF") under the contract at issue in its case is somehow outside the scope of this litigation is simply false. Likewise, contrary to Canal's statements, the Government currently is defending identical claims, covering identical time periods, based upon the same Standard Contract in the FPL Energy case. While some of Canal's alleged damages may be different, the same fundamental

[1] Pursuant to RCFC 40.2(a)(3), this reply is being filed in FPL Energy Seabrook, LLC v. United States, No. 04-88C (Fed. Cl.), captioned in the name of the earliest-filed case, Canal Electric Co. v. United States, No. 04-35C (Fed. Cl.).

factual questions of causation – as well as certain specific damages sought by Canal – are at issue in both cases. Finally, while Canal attempts to analogize this motion with the Government's attempts to consolidate all of the SNF cases that were denied by Chief Judge Damich, this consolidation motion (as evidenced by FPL Energy's response[2]) is entirely different. Unlike the motion presented to the Chief Judge, which involved a request to consolidate identical – yet individually executed – contracts associated with different utilities, different reactors, and different SNF, the cases involving FPL Energy and Canal involve the same contract, the same reactor, and the same SNF. As a result, these cases should be consolidated to the extent that Canal's claims against the United States are allowed to proceed.

## ARGUMENT

### I. THE *CANAL* AND *FPL ENERGY* CASES INVOLVE THE SAME STANDARD CONTRACT, THE SAME PROPERTY, THE SAME REACTOR, AND THE SAME SPENT NUCLEAR FUEL

Canal's repeated contention that the claims of Canal and FPL Energy are "legally and factually distinct" (Canal Response at 7) and its reliance upon Chief Judge Damich's refusal to consolidate all of the pending SNF cases misstates a fundamental fact in this case. Canal and FPL Energy are not two unique plaintiffs who signed similar contracts concerning different assets, as was the situation presented by the consolidation motion that was denied by Chief Judge Damich. Instead, Canal and FPL Energy are suing under the same DOE Standard Contract, concerning the same Seabrook property, the same Seabrook reactor, and the same SNF. As

[2] Because FPL Energy's response to the Government's motion appears to be in accord with the Government's contention that any consolidation decision should await this Court's determination of the pending motion to dismiss, and because FPL Energy has identified no opposition to consolidation if the claim of Canal is allowed to proceed, the Government has no reply to FPL Energy's response.

evidenced by FPL Energy's response and the attachments to that response, FPL Energy's claims are based upon an assignment made by Canal of all of Canal's rights in the Standard Contract, the Seabrook property and the Seabrook SNF, without limitation, to FPL Energy in connection with a purchase and sale agreement. FPL Energy Response at 2-3. Chief Judge Damich's rejection of utility-wide consolidation is inapposite here.

## II. THE *CANAL* AND *FPL ENERGY* CASES INVOLVE SIMILAR – AND, OFTEN, IDENTICAL – LEGAL AND FACTUAL DETERMINATIONS

In its response, Canal identifies three reasons that its claim is factually and legally different from the claims brought by FPL Energy. Specifically, Canal contends:

> (2) the elements of damages sought by Canal and FPLE are clearly distinguishible, as to both substance and time, from one another; (3) the Government's standard rate of acceptance-type defenses may or may not pertain to one case [FPLE's], but certainly not to Canal's; and (4) there are no competing claims for the same or finite dollars in the Judgment Fund.

Canal Response at 6-7 (bracketed text in original).[3] Each of these contentions fails examination.

### A. Both Canal And FPL Energy Seek Damages Allegedly Incurred Prior To 2002

Canal's assertion that "elements of damages . . . are clearly distinguishable" and that "there are no competing claims for the same or finite dollars" (Canal Response at 6) in Canal and FPL Energy is incorrect. Indeed, based upon the "Seabrook Plaintiffs' Correct Response to Defendant's Motion to Transfer and Consolidate in Accordance with RCFC 40.2(a)(3) and 42.1,"

---

[3] In identifying differences between FPL Energy and Canal, Canal's first difference is that the "Government's failure to commence SNF disposal is not disputed." Canal Response at 6. The Government fails to understand why an allgedly undisputed fact that is a precursor to any liability finding with respect to all Standard Contract holders differentiates Canal and FPL Energy, and no explanation is provided by Canal. As a result, that alleged "differentiation" is not addressed here.

and upon the complaints in the respective matters, FPL Energy is seeking, at least in part, identical past damages covering identical past time periods. In its complaint, Canal seeks, among other damages, "increased costs and expenditures incurred by Canal up to the closing date of Canal's sale of Seabrook to store and maintain SNF, and other related costs." Complaint at ¶ 49. Likewise, FPL Energy's complaint alleges that the "Seabrook owners have incurred and will continue to incur damages in an amount to be determined at trial." FPL Energy Complaint at ¶ 25. Both FPL Energy and Canal seek past damages allegedly associated with the on-site storage of the same SNF. Canal's contention that FPL Energy's damages only "occur from and after the date of assignment" is unsupported by the complaints filed in each case.

FPL Energy's response to the Government's motion to transfer and consolidate – as well as the attachments to that response – contradict Canal's contention that there is a clear demarcation between the date upon which Canal's damages end and FPL Energy's damages begin. FPL Energy's position is that Canal's assignment of its rights under the Standard Contract and to the Seabrook SNF and real property is without limitation. See FPL Energy Response at 3-6. Moreover, there appears to be nothing in the purchase agreement that carves out damages prior to the date of assignment. Id. at Attachment 1. In any event, were Canal's statement true, it is belied by Canal's failure to assert a breach of contract claim through November 1, 2002, the date upon which the purchase and sale of the Seabrook reactor closed. FPL Energy Response at 2. There is no demarcation between the claim of Canal and those of FPL Energy. While Canal may seek some damages that are different from those sought by FPL Energy, certain damages are identical.

In any event, even if Canal's allegations were true, to determine whether storage costs incurred by FPL Energy beginning upon the date of the assignment were "caused" by DOE's delay in SNF acceptance, the Court will have to evaluate the same pre-assignment activities and conduct to determine if, and/or when, DOE's delay "caused" the owner(s) of the Seabrook reactors to begin incurring incremental storage costs. As a result, transfer and consolidation of these cases is appropriate and necessary to ensure that duplicative judgments are not entered against the United States and that wasteful and duplicative discovery and pleadings proceedings are not necessary.

B. The Rate Of Acceptance Is Implicated By Canal's Claim

Canal's argument that complex issues, such as those relating to the rate of SNF acceptance, do not pertain to its case is false, a fact that supports consolidation here. As set forth in the Government's pending motion to dismiss, Canal's takings claim is based upon the proposition that the Government's failure to begin SNF acceptance by January 31, 1998, as set forth in the Standard Contract, resulted in a taking of Canal's property. See, e.g., Complaint at ¶¶ 55-56. Notwithstanding the case law that demonstrates that a takings claim may not be predicated upon a breach of contract, if Canal is allowed by this Court to maintain its claim, the rate of SNF acceptance is directly relevant to a determination of liability and damages.

Canal's claim is predicated upon the existence of SNF upon its property as of the date of sale to FPL Energy that, but for the breach, would not have been stored upon that property. As a result, in order for a taking to have occurred (under Canal's theory of liability), SNF must have been stored upon the property as of November 1, 2002, that otherwise would not have been upon the property. However, if the Seabrook facility did not have acceptance rights prior to November

1, 2002, under the acceptance queue set forth in the Standard Contract, no taking could have resulted from the existence of SNF on-site at the time of Canal's sale.[4] This is because, under that scenario, the SNF upon site at the time of sale was exactly the same quantity that would have been on-site had DOE begun performance in 1998.

The rate of acceptance, among a myriad of other issues, is a dispositive issue in this case. While Canal is correct in stating that its claims do not implicate future damages and, therefore, rate of acceptance questions beyond 2002, its claims hinge upon the existence of acceptance rights in the first four years of DOE's program – rights that are tied inextricably to the rate of acceptance.[5] Here, in a case that involves not simply "similar" contracts, but the same contract concerning the same property and the same SNF, the Government should not be required to litigate rate of acceptance issues in two separate cases, before two separate judges. The presence of identical legal and factual issues in both cases supports transfer and consolidation here.[6]

---

[4] So the Court is aware of the significance of the rate issue to this litigation, based upon either the rate set forth in the 1991 ACR or the rate set by this Court in the Indiana Michigan litigation, if forced to litigate this case, the Government will establish that Seabrook did not have any allocations in the first 10 years of DOE's program.

[5] Canal also cites Greater-Than-Class-C ("GTCC") radioactive waste issues that may be present in the FPL Energy case, but that are not present in Canal's litigation, as a distinguishing legal and factual issue between the two cases. Canal Response at 12. Given that FPL Energy has not identified the scope of damages that it seeks in its case, it is improper to assume that the presence of GTCC at Seabrook will be an issue in the FPL Energy case.

[6] The Government disputes Canal's contention that the issues presented in FPL Energy are "much more complex" than the issues Canal seeks to litigate. Canal Response at 2. The diminution damages that Canal seeks, as well as the litigation in which it hopes to engage concerning the over-collection of fees by the Government under the Standard Contract, are complicated damages issues.

C. The Assignment Detailed In FPL Energy's Response Supports Consolidation

To the extent that Canal's claim is allowed to proceed beyond the pending motion to dismiss, transfer and consolidation is appropriate to resolve the assignment issues raised by FPL Energy's response. FPL Energy clearly believes that it purchased, and that Canal has assigned, all of Canal's rights under the Standard Contract, to its SNF, and to the Seabrook property. If Canal's claim is allowed to proceed, it is likely that the next issues to be litigated will involve the assignment to FPL Energy. To the extent that Canal's claims are allowed to proceed, the two cases should be consolidated to allow for coordinated treatment of this dispositive issue.

Canal's attempt to use the Government's arguments in Entergy Nuclear Generation Co. v. United States, No. 03-2626 (Fed. Cl.), and Rochester Gas & Electric Co. v. United States, No. 04-118C (Fed. Cl.), to support its contention that the facts of Canal and FPL Energy are separate and distinct fails, as Canal misstates and misapplies the Government's arguments here. First, in Entergy and Rochester, the Government has discussed the interrelationship of the assignment provision of the Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. § 102222(b)(3); its relationship to the Assignment of Claims Act, 31 U.S.C. § 3727, and Assignment of Contracts Act, 41 U.S.C. § 15; and the effect of those statutes upon the assignments in the Entergy and Rochester cases. However, as this Court is aware, the Government may elect to waive its right to challenge an assignment, thereby validating the assignment. See, e.g., Riviera Finance of Texas, Inc. v. United States, 58 Fed. Cl. 528, 530 (2003). Although our research upon this issue is continuing, it would appear that, although the doctrine of "assignor estoppel" generally applies in patent cases, Canal should be similarly barred from now maintaining a lawsuit based upon its own

contention that its assignment was invalid. See, e.g., Earth Resources Corp. v. United States, 44 Fed Cl. 274, 278 (1999).

Second, Canal misstates the Government's position in the Entergy and Rochester cases. The Government has not argued that factual and legal issues "completely separate and distinguish a seller's claim from a buyer's claim." Canal Response at 10. Instead, the Government has argued that any assignment of claims pre-exiting the assignment of the Standard Contract are not enforceable against the Government, absent a waiver. The Government has not argued that the claims of Boston Edison and Entergy, which are based upon the same contract and the same SNF, should not be consolidated. To the contrary, the Government has affirmatively requested consolidation of the Boston Edison and Entergy cases.

## III. CANAL'S CONTENTION THAT PREJUDICE WILL ATTACH IF THE CLAIMS ARE CONSOLIDATED IGNORES CANAL'S COMPLICITY IN ANY DELAY

Canal's contention that consolidation of the two cases would deny Canal timely adjudication of its claims should be rejected. Canal Response at 14-15. Canal alleges that DOE breached its obligations under the Standard Contract on January 31, 1998. See, e.g., Complaint at ¶¶ 55-56. It further alleges that the taking pre-dated the January 31, 1998 performance date. Complaint at ¶ 4 ("[t]he value of Seabrook was significantly diminished when it became apparent that DOE would not begin accepting and removing SNF by January 31, 1998."). Canal sold its interests and assigned its claims and rights to FPL Energy on November 1, 2002. FPL Energy Response at 2. However, Canal did not sue the Government "when it became apparent that DOE would not begin accepting" SNF, it did not sue immediately after January 31, 1998, and it did not sue immediately after the sale on November 1, 2002. Instead, Canal waited until January 13,

2004, to file its complaint. Any delay in adjudicating Canal's rights can be tied directly to Canal's decision to delay filing its case against the Government. Canal should not be allowed to use its procrastination and delay as a defense to an otherwise appropriate motion to consolidate.

## CONCLUSION

For the foregoing reasons, and those set forth in our motion to transfer and consolidate, the Government respectfully requests that, if Canal's claim is allowed to proceed, this Court transfer and consolidate the FPL Energy and Canal cases.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ John C. Ekman
JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 353-0897
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

January 10, 2005

CERTIFICATE OF FILING

I hereby certify that on this 10th day of January 2005, a copy of foregoing "DEFENDANT'S REPLY IN SUPPORT OF MOTION TO TRANSFER AND CONSOLIDATE IN ACCORDANCE WITH RCFC 40.2(a)(3) AND 42.1" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ John C. Ekman